968 So.2d 86 (2007)
Richard GREEN, a/k/a Richard Reginald Green, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-3283.
District Court of Appeal of Florida, Second District.
November 16, 2007.
*87 James Marion Moorman, Public Defender, and John Thor White, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Tonja Rene Vickers, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Richard Green appeals his judgments and sentences for robbery with a firearm and four counts of aggravated assault with a firearm. He argues that the trial court committed fundamental error when it used the expression "and/or" between his name and his codefendant's name while instructing the jury. Mr. Green contends that this error requires a new trial on all charges. We agree that the use of "and/or" in the jury instructions for the aggravated assault charges did constitute fundamental error. However, we find no error in the jury instructions for the robbery charge. Accordingly, we reverse Mr. Green's judgments and sentences on the four counts of aggravated assault with a firearm and remand for a new trial on those charges. We affirm Mr. Green's judgment and sentence for robbery with a firearm.

I. The Facts, Charges, and Verdicts
The State charged Mr. Green, Duriel Holley, and Stacey Sawyer with the robbery of the GTE Federal Credit Union in Winter Haven on the morning of September 12, 2002. The State's account of the incident was that Mr. Green and Mr. Holley entered the credit union with shotguns and forced the employees to give them cash from the teller drawers. Mr. Sawyer acted as the getaway driver; he waited outside in the car until Mr. Green and Mr. Holley emerged with the money. Then the three men sped away in a blue Chevy Cavalier.
At trial, the State's witnesses included credit union employees and a customer who was at the drive-through window that morning. They testified that two males entered the building just after 9 a.m. The men wore dark, baggy clothing and latex gloves. The first man, who wore a mask, stayed in the front lobby area, holding a shotgun over two bank employees whom he had forced to the floor. The second man wore a bandana covering his face and a hooded sweatshirt. He jumped over the teller counter, rummaged through the cash drawers, and took cash at gunpoint from a teller, Chivonne Wilson, who got up off the floor to help him. The witnesses offered only vague descriptions of each man's height, weight, and build, and none of the witnesses could identify any facial features of either man. The witnesses' accounts differed concerning whether they saw two or three men in the blue Chevy Cavalier as it sped away from the credit union.
The State tried Mr. Green and Mr. Holley jointly for the offenses arising out of the incident. After pleading guilty in exchange *88 for a lesser sentence for his participation in the robbery, Mr. Sawyer (the get-away driver) testified against Mr. Green and Mr. Holley. The jury found both men guilty of one count of robbery with a firearm[1] and four counts of aggravated assault with a firearm[2]one count for each teller whom the men had threatened either in the lobby or behind the teller counter.[3] The trial court sentenced Mr. Green to life imprisonment for the robbery and to four concurrent five-year terms of imprisonment for the four aggravated assaults.

II. The Jury Instructions
When the trial court read the jury instructions, it began by using both defendants' names in the Statement of the Charge:
Duriel Keith Holley and Richard Green, the Defendants in this case[,] have been accused of the crimes of robbery with a firearm and four counts of aggravated assault with a firearm.
The court then gave a single instruction for the robbery count but did not use any names when listing the essential elements of the crime. Instead, the trial court simply used the general term "the Defendant":
Before you can find the Defendant guilty of robbery, the State must prove the following elements beyond a reasonable doubt. One, that the Defendant took money from the person or custody of Chivonne Paradise Wilson.[[4]] Two, that force, violence, assault, or putting in fear was used in the course of the taking. Three, that the property taken was of some value. And, four, the taking was with the intent to permanently or temporarily deprive Chivonne Paradise Wilson of the right to the property or any benefit from it. . . . If you find that the Defendant carried a firearm in the course of committing the robbery[,] you should find him guilty of robbery with a firearm. If you find the Defendant carried no firearm or weapon in the course of committing the robbery, but did commit the robbery[,] you should find him guilty only of robbery.
When the trial court reached the instruction for aggravated assault with a firearm, it apparently reflected on the tedium that would ensue from reading the same instruction four timesi.e., once for each teller, other than Ms. Wilson, who had been threatened. It was perhaps for this reason that the court prefaced the reading of the aggravated assault instruction with the following:
Now, Members of the Jury, please understand that instead of reading this same instruction four times for Count[s] Three, Four, Five[,] and Six,[[5]] I'm going *89 to read it once. . . . When I mention a victim[,] I'm going to go through the alleged four victims's [sic] names, okay?
The trial court then gave the following instruction:
Before you find the Defendant guilty of aggravated assault, the State must prove the following four elements beyond a reasonable doubt. The first three elements define the term assault. Number one, that Duriel Holley and/or Richard Green intentionally and unlawfully threatened either by word or act to do violence to Linda Schoonover, Nicole Bonnick, Angela Wilson, Rebecca Argueta. At the time Duriel Keith Holley appeared to have the ability  I'm sorry Duriel Keith Holley and/or Richard Green here and after referred to as the Defendant, at the time, the Defendant appeared to have the ability to carry out the threat. Number three, that the act of the Defendant created in the mind of the listed alleged victims a well founded fear that the violence was about to take place. And, number four, that the assault was made with a firearm.
(Emphasis added.) Thus the trial court used the expression "and/or" between the codefendants' names in the first two elements of the jury instruction for aggravated assault with a firearm. Before the court read the third and fourth elements, however, it reverted to using the general term, "the Defendant."

III. Discussion
Mr. Green admits that trial counsel accepted the jury instructions as read without objection. As the Supreme Court of Florida explained in State v. Delva, "[i]nstructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred." 575 So.2d 643, 644 (Fla.1991). Therefore, an error in unobjected-to jury instructions must be fundamental for an appellate court to consider it on appeal. Mr. Green argues that the error in his case was fundamental because it deprived him of his fundamental right to an individualized verdict on all counts.
We first note that this court has consistently found fundamental error when a trial court uses a conjunction or the expression "and/or" between the names of codefendants while identifying the required elements of an offense. See, e.g., Zeno v. State, 910 So.2d 394, 396 (Fla. 2d DCA 2005) (finding jury instructions to be fundamentally wrong where the word "or" was inserted between codefendants' names in instructing the jury on the essential elements of the crimes charged); Pizzo v. State, 916 So.2d 828, 833-34 (Fla. 2d DCA 2005), quashed on other grounds, 945 So.2d 1203 (Fla.2006); Rios v. State, 905 So.2d 931, 932 (Fla. 2d DCA 2005); Davis v. State, 895 So.2d 1195, 1196 (Fla. 2d DCA 2005) (finding that an instruction using the expression "and/or" between codefendants' names deprived the defendant of her right to an individualized verdict); Cabrera v. State, 890 So.2d 506, 508 (Fla. 2d DCA 2005); see also Zeno v. State, 922 So.2d 431, 433 (Fla. 2d DCA 2006) (finding that appellate counsel provided ineffective assistance of counsel by not arguing that inserting the conjunction "or" between codefendants' names in the jury instructions on the essential elements of the charged offenses constituted fundamental error).
In this context, the use of the expression "and/or" incorrectly and confusingly implies that Defendant A can be convicted solely upon a finding that Defendant B's conduct satisfied the elements of the offense. Cabrera, 890 So.2d at 508. This *90 error is particularly offensive because in theory a jury could convict Defendant A where it found that neither defendant's conduct in isolation satisfied all of the required elements, but when combined with Defendant B's conduct, all elements were satisfied.
The State argues that the problems with the instructions in Mr. Green's case were remedied when the trial court gave two supplemental instructionsi.e., the standard "principals" instruction[6] and the standard "separate defendants" instruction.[7] According to the State, the supplemental instructions cured the defects caused by the improper use of "and/or" in the primary instruction. We disagree.
Two years ago in Zeno, this court rejected a similar argument concerning the use of the standard "principals" instruction. 910 So.2d at 396 ("We specifically reject the State's argument that the use of the standard `principals' instruction cured the erroneous instructions on the substantive elements of the offenses."). With respect to the use of the standard "separate defendants" instruction, the Third District has stated that its use may add to the confusion caused by the appearance of "and/or" in the primary instruction instead of curing it. Dorsett v. McRay, 901 So.2d 225, 227 (Fla. 3d DCA 2005). In Dorsett, the Third District observed:
[T]he confusion engendered by the and/or was, if anything, heightened rather than cured by the standard instruction. This is so because (a) even if the charges against each defendant were to be considered separately, as the standard jury instruction stated, the primary instruction still provided that [Defendant A] might be criminally liable solely if [Defendant B] was liable; and (b) the reference to any other defendant is totally unrelated to this case in which no other defendant was on trial.
Id. at 227. For these reasons, we conclude that the supplemental instructions read in this case did not cure the defects caused by the improper use of and/or in the primary instruction for aggravated assault.
In an alternative argument, the State suggests that we should adopt a contextual approach as the Fourth District did in Garzon v. State, 939 So.2d 278 (Fla. 4th DCA 2006), review granted, 956 So.2d 455 (Fla.2007) (table decision). The Garzon court distinguished the case before it from its prior decisions holding that the use of *91 and/or between codefendants' names in a jury instruction constituted fundamental error. 939 So.2d at 286 (distinguishing Garzon from Davis v. State, 804 So.2d 400 (Fla. 4th DCA 2001), and Williams v. State, 774 So.2d 841 (Fla. 4th DCA 2000)). In Garzon, the Fourth District found special contextual circumstances in the facts of that case because Garzon had participated in the burglary and robbery at issue by means of a cell phone.[8]Id. at 280-81. Without question, Garzon was not present in the victims' home when the crimes occurred. Therefore, the Fourth District reasoned that the only way the jury could possibly have found him liable was if the principal instruction applied to him. Id. at 284-85. Under these specific circumstances, the principals instruction was central to the case and placed all the other instructions in the proper context. Id. Accordingly, the Fourth District concluded that the improper and/or instruction was harmless in Garzon's case. Id. at 286.
Similarly, in Lloyd v. Crosby, 917 So.2d 988 (Fla. 3d DCA 2005), the Third District carved out an exception to the general proposition that use of the expression and/or between codefendants' names constitutes fundamental error. In that case, two codefendants, Lloyd and Dorsett, were tried together. Id. at 988. Lloyd allegedly acted as one of the armed gunmen while Dorsett allegedly acted as the getaway driver. Id. at 989. On those facts, the Third District concluded that there [was] nothing that [the getaway driver] did or could have done which would have resulted in the wrongful conviction of Lloyd. Id. Consequently, the Third District held that the use of the expression and/or in the jury instructions was harmless as to Lloyd. Id.
Based on Lloyd and Garzon, we recognize the possibility that error arising from the use of and/or in the jury instructions in a case with multiple codefendants may be harmless.[9] However, we cannot find similar distinguishing circumstances that lead us to that conclusion in this case. Unlike Lloyd, the State did not claim in Mr. Green's case that either codefendant acted exclusively as a getaway driver. Instead, the State asserted that both Mr. Green and Mr. Holley participated in the crimes inside the building. Further, the robbers' identities were disputed, and the evidence varied with respect to each robber's role at the crime scene. In particular, the evidence showed that each man interacted differently with the four tellers who were assaulted.
*92 The problem in this case is that the and/or instruction read by the trial court stating the essential elements of aggravated assault with a firearm could have misled the jury to convict Mr. Green based wholly or in part on Mr. Holley's conduct. For this reason, we reject the State's invitation to find exceptional circumstances and to conclude that the jury would have found Mr. Green guilty of all four assaults in either case, i.e., either directly through his own actions or vicariously as a principal to Mr. Holley's actions. The issue of Mr. Green's guilt on the four charges of aggravated assault with a firearm must be determined by a jury that has been properly instructed on the elements of the crime.
We also reject Mr. Green's argument that the improper use of the expression "and/or" in the instruction on aggravated assault tainted the robbery instruction by association. He suggests that the trial court somehow merged the two defendants into a single entity for all the instructions. We cannot agree with this reading of the instructions. The trial court did not use the expression "and/or" when it read the essential elements for the charge of robbery with a firearm. Later, when the trial court read the instructions for aggravated assault and erroneously used the construction, "Duriel Holley and/or Richard Green," the court never suggested that the jury should apply this phrase to the earlier robbery instruction. It follows that the jury was properly instructed on the robbery charge.

IV. Conclusion
To summarize, we conclude that the improper use of the expression "and/or" in the jury instruction on the elements of aggravated assault constituted fundamental error. Therefore, we reverse Mr. Green's convictions on the four counts of aggravated assault with a firearm, and we remand for a new trial on those charges. However, because this error did not affect the robbery instruction, we affirm Mr. Green's judgment and sentence for robbery with a firearm.
Affirmed in part, reversed in part, and remanded with directions.
CASANUEVA and SALCINES, JJ., Concur.
NOTES
[1] Robbery with a firearm is a first-degree felony punishable by up to life imprisonment. § 812.13(2)(a), Fla. Stat. (2002).
[2] Aggravated assault is a third-degree felony punishable by imprisonment for up to five years. §§ 775.082(3)(d), 784.021, Fla. Stat. (2002).
[3] In addition to the robbery and four counts of aggravated assault, the State also charged both defendants with an additional offense armed burglary with assault or battery while armed. § 810.02(2)(a), Fla. Stat. (2002). For reasons not pertinent to this opinion, the trial court directed a not guilty verdict on this chargecount oneafter the codefendants had moved for a judgment of acquittal and before the court instructed the jury.
[4] The State charged Mr. Green and Mr. Holley with taking the money from Ms. Wilson's custody because she was the teller who helped the second robber remove cash from the teller drawers.
[5] The armed burglary charge was designated as count one and the robbery charge as count two. Thus the four aggravated assault charges were identified as counts three through six.
[6] Florida's standard jury instruction on "principals" the specific instruction given in this caseprovides:

If the defendant helped another person or persons commit [robbery with a firearm and aggravated assault with a firearm], the defendant is a principal and must be treated as if he had done all the things the other person or persons did if
1. the defendant had a conscious intent that the criminal act be done and
2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime.
To be a principal, the defendant does not have to be present when the crime is committed.
Fla. Std. Jury Instr. (Crim.) 3.5(a) (emphasis added).
[7] Florida's standard jury instruction on "separate defendants" the specific instruction given in this caseprovides:

A separate crime is charged against each defendant in each count of the information. The defendants have been tried together; however, the charges against each defendant and the evidence applicable to him must be considered separately. A finding of guilty or not guilty as to one of the defendants must not affect your verdict as to any other defendant or other crimes charged.
Fla. Std. Jury Instr. (Crim.) 3.12(c) (emphasis added).
[8] The evidence showed that Garzon had prior knowledge of the victims' home and used this knowledge to direct his coconspirators via cell phone from a remote location on where to look within the residence for a hidden safe and valuables.
[9] In Garzon, the Fourth District certified conflict with this court's decision in Zeno. 939 So.2d at 287 (citing Zeno, 910 So.2d at 394). The Fourth District characterized Zeno as "stand[ing] for the proposition that the `and/or' conjunction in the jury charge on substantive crimes is always fundamental error in a case with multiple codefendants, regardless of context." Id. (emphasis added). We disagree with this characterization of our holding in Zeno.

In Zeno, this court did reject the State's argument that the "principals" instruction automatically cured the erroneous use of the expression "and/or" in the primary instruction. 910 So.2d at 396. However, we did not say in Zeno that there could never be a circumstance in which we would find the improper use of "and/or" in jury instructions to be nonfundamental or somehow rendered harmless by other considerations. Moreover, we do not see a conflict between this court's decisions and the two exceptions carved out in Garzon and Lloyd. Those two cases presented special factual circumstances not present in this case. Consequently, it is unnecessary to certify conflict with Garzon.